IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Sonoco Products Company and Sonoco Canada Corporation, | ) ) ) | Civil Action No.: 4:11-cv-02366-RBH |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| ACE INA Insurance, ACE American Insurance Company, National Union Fire Insurance Company of Pittsburgh d/b/a Chartis Insurance, Westport Insurance Corporation d/b/a Industrial Risk Insurers, and Munich Reinsurance America, Inc. | ) ) ) ) ) ) ) | **ORDER** |
| Defendants. | ) ) | |

Plaintiffs Sonoco Products Company ("Sonoco Products") and Sonoco Canada Corporation

("Sonoco Canada") (collectively, "Plaintiffs") filed this lawsuit alleging that Defendants, various

insurance companies, failed to insure Plaintiffs for a loss covered under two separate polices. This

matter is before the Court on Defendants' Motion to Dismiss, which seeks the dismissal of

Defendant ACE INA Insurance ("ACE INA") under Federal Rules of Civil Procedure 12(b)(2) and

12(b)(5), and seeks the dismissal of the entire action pursuant to the doctrine of *forum non*

*conveniens*. For the reasons stated below, Defendants' Motion to Dismiss is granted in part and

denied in part. Specifically, ACE INA is dismissed from this action for lack of personal jurisdiction,

while the remaining Defendants' request to dismiss this case on the ground of *forum non conveniens*

is denied.[1]

---

[1] Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." The issues have been briefed by the parties, and the Court believes a hearing is not necessary.

## Background

Sonoco Products is a South Carolina corporation, while Sonoco Canada is a Canadian corporation. Sonoco Canada, a subsidiary of Sonoco Products, is a corporate entity separate and apart from its parent corporation. According to the Complaint, Sonoco Products is a global supplier of industrial and consumer packaging. Sonoco has facilities located in several foreign countries, including the Sonoco Canada Trent Valley Mill facility in Toronto, Canada, where the loss at issue occurred.

Each year from its South Carolina headquarters, Sonoco Products solicits property insurance to cover its global operations. It does so by means of one submission for insurance coverage which provides an explicit set of terms and conditions. The submission contemplates that one carrier will be the lead, or fronting insurer, for a worldwide policy, and that other carriers will be bound to a participation share and will follow the fortunes of the fronting insurer. The submission goes on to provide that the fronting insurer is responsible for procuring local policies in certain countries, including Canada, where Sonoco subsidiaries do business.

As formulated, the insurance program consisted of a U.S. Master Policy ("Master Policy") and numerous locally admitted policies issued in certain foreign countries. Therefore, certain international property, such as the Trent Valley Mill where the loss at issue occurred, is covered under both the Master Policy and a separate locally admitted policy originating from the country in which the property is located.

Based on Sonoco Products' submission, ACE American Insurance Company ("ACE American"), a corporation headquartered outside of South Carolina, submitted a proposal to front the property insurance program to Sonoco Products for 2010–11, the coverage year at issue. Sonoco Products ultimately reached an agreement with ACE American, who in turn became the fronting insurer for the Master Policy. As the fronting insurer, ACE American

arranged for ACE INA to issue policy No. ST02810 to Sonoco Canada (the "Canadian Policy"). The only parties to the Canadian Policy were Sonoco Canada and ACE INA. Although ACE INA is an affiliate of ACE American, it is a distinct corporate entity located in Canada and organized under Canadian law.

On July 16, 2010, a roof collapsed at Sonoco Canada's Trent Valley Mill. Because the Canadian property was insured under both the Master Policy and the Canadian Policy, both Sonoco Products and Sonoco Canada made a claim under their respective policies. The insurers that issued the Master Policy, fronted by ACE American, denied all claims under that policy. ACE INA also denied Sonoco Canada's claims under the Canadian Policy.

On July 15, 2011, Sonoco Products and Sonoco Canada ultimately filed the lawsuit at issue in South Carolina state court, alleging claims against ACE INA relating to the Canadian Policy, and claims against the remaining Defendants as insurers of the Master Policy. Defendants removed the action to this Court on September 20, 2011. Sometime after Plaintiffs filed their lawsuit in state court, ACE INA filed a separate lawsuit in a Canadian court, seeking a declaration of its rights and obligations under the Canadian Policy as against Sonoco Canada.

### Discussion

Defendants have moved to dismiss ACE INA for lack of jurisdiction and lack of service of process, and have moved to dismiss the case as to all Defendants on the basis of *forum non conveniens*. This Court will begin by discussing the Motion to Dismiss as it relates to ACE INA.

### I.        Dismissal is appropriate as to ACE INA

This Court lacks personal jurisdiction over Defendant ACE INA. Further, even if this Court were able to exercise personal jurisdiction, the doctrine of *forum non conveniens* would nonetheless require dismissal of the claims against ACE INA.

<u>A.</u>     <u>Personal jurisdiction</u>

<u>1.</u>     <u>Standard of review</u>

When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Dowless v. Warren-Rupp Houdailles, Inc*., 800 F.2d 1305, 1307 (4th Cir. 1986)). "Yet when, as here, the district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a *prima facie* case of personal jurisdiction." *Id.* (citing Combs, 886 F.2d at 676). "In deciding whether a plaintiff has proven a *prima facie* case of personal jurisdiction, a court may consider all parties' "pleadings, affidavits, and other supporting documents presented to the court" and must construe them "in the light most favorable to plaintiff, drawing all inferences [and] resolving all factual disputes in his favor," and "assuming [plaintiff's] credibility." *Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99–2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000); *Mylan Labs*., 2 F.3d at 62; *Combs*, 886 F.2d at 676. A court, however, need not "credit conclusory allegations or draw farfetched inferences." *Massellli*, 2000 WL 691100, at *1 (quoting *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)). A plaintiff must also base his claim for personal jurisdiction "on specific facts set forth in the record." *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc*., 784 F.Supp. 306, 310 (D.S.C. 1992).

Although personal jurisdiction over an out-of-state defendant may be either general or specific, Plaintiffs allege only specific jurisdiction in this case. [Pls.' Resp., Doc. #6, at 7.] A court may exercise specific jurisdiction when "the out-of-state defendant engage[s] in some activity purposely aimed toward the forum state and . . . the cause of action arise[s] directly

4

from that activity." *ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 331–32 (D.S.C. 1999); *see* S.C. Code Ann. § 36–2–803. Minimal, isolated or unsolicited contacts, however, do not give rise to the required purposeful connection between an out of state defendant and the forum state. *Umbro USA, Inc. v. Goner*, 825 F.Supp. 738, 741 (D.S.C. 1993).

A district court may exercise personal jurisdiction "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). The Supreme Court of South Carolina has interpreted South Carolina's long-arm statute, S.C. Code Ann. § 36–2–803, to extend to the outer limits of Fourteenth Amendment due process. *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). "Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process." *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 491, 611 S.E.2d 505, 508 (2005).

The Due Process Clause is satisfied for personal jurisdiction purposes if a defendant has "purposefully availed itself of the privilege of conducting business in the forum state" by establishing sufficient "minimum contacts" "such that maintenance of the suit does not offend traditional notions of "fair play and substantial justice." *Burger King v. Rudzewicz*, 471 U.S. 462, 475–76 (1985); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A defendant has sufficient minimum contacts with a state when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Woodson*, 444 U.S. at 297.

The Fourth Circuit has synthesized the due process requirements for asserting specific personal jurisdiction into a three-part test that considers "(1) the extent to which the defendant

purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).  Failure to satisfy any of the three prongs is fatal to a court's ability to exercise specific jurisdiction. *Id.*

<u>2.    The Court lacks personal jurisdiction over ACE INA</u>

Plaintiffs cannot prove a *prima facie* case of personal jurisdiction over ACE INA.

<u>i.    No purposeful availment</u>

ACE INA has not availed itself of the privilege of conducting activities in South Carolina, making the exercise of specific jurisdiction over ACE INA inappropriate.

The requirement of purposeful availment "is not susceptible to mechanical application." *Consulting Eng'rs Corp.*, 561 F.3d at 278; *see also Int'l Shoe Co.*, 326 U.S. at 319. However, courts have examined several nonexclusive factors in examining purposeful availment:

(1)    whether defendant maintains offices or agents in the forum state;

(2)    whether defendant owns property in the forum state;

(3)    whether defendant reached into the forum state to solicit or initiate business;

(4)    whether defendant deliberately engaged in significant or long-term business activities in the forum state;

(5)    whether the parties contractually agreed that the law of the forum state would govern disputes;

(6)    whether defendant made in-person contact with the resident in the forum state regarding the business relationship;

(7)    the nature, quality, and extent of the parties' communications about the business being transacted; and

(8)    whether the performance of contractual duties was to occur within the forum.

*See Consulting Eng'rs Corp.*, 561 F.3d at 278 (internal citations omitted).

Applying these factors to the case at bar, even when resolving all factual disputes in Plaintiffs' favor and assuming Plaintiffs' credibility, show that ACE INA did not purposefully avail itself of the laws and privileges of conducting business in South Carolina.

ACE INA maintains no presence in South Carolina, owns no property in South Carolina, and has never "made in-person visits to South Carolina." [Pls.' Resp., Doc. #6, at 9.] Nowhere do Plaintiffs' allege that ACE INA had any direct contact with Sonoco Products inside or outside South Carolina. In fact, Plaintiffs make clear that ACE American, the fronting insurer and a corporation headquartered outside of South Carolina, was "responsible for securing local coverage in Canada." [*Id.*]

Further, the Canadian Policy, the only policy to which ACE INA is a signatory, covers only property located in Canada, is between two Canadian companies, and was neither applied for nor issued in South Carolina. [Leduc Aff., Doc. #4-3, at ¶ 10.] The Canadian Policy specifically disavows application of South Carolina law by including a choice of law provision directing that the "law of the [Canadian] province where the property is located will control." [Pls.' Resp., Doc. #6, at 10.]

Plaintiffs argue that ACE INA purposefully availed itself of South Carolina law because it was "a critical and integrated aspect of the fronting program assembled by ACE American in response to [Sonoco Products'] submission," and that ACE INA "has solicited business [in South Carolina] through ACE American . . . ." [*Id.* at 9–10.] Plaintiffs' argument improperly focuses on the relationship between ACE American and ACE INA, rather than on the jurisdictionally significant relationship: the extent to which ACE INA availed itself of the privilege of doing business in South Carolina.

Plaintiffs offer nothing more than a conclusory statement to show that ACE INA solicited business in South Carolina. *See Massellli*, 2000 WL 691100, at *1 (noting that a court need not "credit conclusory allegations" when deciding whether a plaintiff makes a *prima facie* showing of personal jurisdiction). Sonoco Products initially solicited insurance companies to provide property insurance for its global operations. [Pls.' Resp., Doc. #6, at 2.] Plaintiffs acknowledge that "one carrier [was] the lead or fronting carrier," and that this fronting carrier was responsible for arranging both the Master Policy and the various local policies in foreign countries where Sonoco Products or its subsidiaries held property. [*Id.* at 2–5; Anfinson Aff., Doc. # 6-1, at ¶ 5.] In response to this solicitation, ACE American (and not ACE INA)[2] submitted a proposal to be the fronting carrier, which Sonoco Products ultimately accepted. [Anfinson Aff., Doc. # 6-1, at ¶ 8.]

The record and Plaintiffs' own recitation of the case show that Sonoco Products dealt only with ACE American in securing coverage and that, at most, ACE INA merely crafted the Canadian Policy pursuant to requirements relayed by ACE American. [Pls.' Resp., Doc. #6, at 3, 8–10; Anfinson Aff., Doc. # 6-1, at ¶ 8; Canadian Policy., Doc. # 6-1, at 15.] Even taking Plaintiffs' allegations as true, ACE INA could not have "reasonably anticipate[d] being haled into court [in South Carolina]" based upon the action of writing a Canadian insurance policy, presumably at the direction of its non-South Carolina based affiliate, and covering property located in Canada for a Canadian insured. *Woodson*, 444 U.S. at 297.

---

[2] Plaintiffs do not challenge the proposition that ACE American and ACE INA are distinct corporate entities. That the two companies are legally distinct is strongly supported under the law. *See, e.g., Kreisler v. Goldberg*, 478 F.3d 209, 214 (4th Cir. 2007) (holding that it is a fundamental precept of corporate law that each corporation is a separate legal entity with its own debts and assets, even when such corporation is an affiliate or a subsidiary wholly owned by another corporate entity).

It may be true that Sonoco Products promulgated a list of requirements applicable to all policies, and that as fronting insurer ACE American was to facilitate a Canadian Policy subject to these requirements. Regardless, this does not show that ACE INA directed any activity toward, or conducting any activity in, the State of South Carolina. To rule that ACE INA is properly before the Court would thus turn the required personal jurisdiction analysis on its head. Rather than examine whether ACE INA availed itself of the privilege of conducting activities in South Carolina, the Court would be focusing instead on whether the activities of Sonoco Products, a South Carolina company, were directed into Canada or at ACE INA.

Plaintiffs' only other argument that ACE INA availed itself of South Carolina's jurisdiction is that ACE INA used Tom Sheets, a South Carolina-based claims adjuster, to handle its claim. [Pls'. Resp., Doc. #6, at 9–10.] However, Plaintiffs were responsible for the selection of Mr. Sheets. Sonoco Products submitted various terms and conditions to ACE American, as the fronting insurer, which governed how local policies in certain countries, including Canada, were to be administered. [Pls.' Resp., Doc. #6, at 2–3.] Sonoco Products' own terms and conditions stated that "Tom Sheets [was to serve as adjuster] for all claims outside USA and for all claims within USA." [*Id*. at 3, 5.] Further, Plaintiffs contend that ACE American was responsible for working with other insurers, including ACE INA, in investigating any claim. [*Id*. at 5.] Accordingly, the most Plaintiffs have shown is that pursuant to Sonoco Products' own requirement, ACE American ensured that ACE INA selected Mr. Sheets as a claims adjuster. This is hardly "some activity purposely aimed" by ACE INA toward South Carolina. *See ESAB Group, Inc.*, 34 F. Supp. 2d at 331–32.

Assuming, *arguendo*, that ACE INA was responsible for selecting Mr. Sheets as its claims adjuster, a single, three-page letter from Mr. Sheets is all Plaintiffs include to establish

a supposed significant contact with South Carolina. [Sheets Ltr., Doc. # 6-1, at 29–31.] Although a South Carolina address is on the letterhead, the letter itself simply mentions that Mr. Sheets requested information on ACE INA's behalf, and then sets forth ACE INA's coverage position. [*Id*. at 29.] The letter has no indication of any work performed by Mr. Sheets outside of requesting information, contains no other discussion about the interaction between ACE INA and Mr. Sheets, and Plaintiffs have offered no actual correspondence or communication directly from ACE INA. [*See id*. at 29–31.]

The limited activity of ACE INA, even as alleged by Plaintiffs, does not amount to a *prima facie* showing of personal jurisdiction under the circumstances of this case. *See, e.g.*, *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2792 (2011) (Breyer, J., concurring) (explaining that the Supreme Court has "strongly suggested that a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant"); Arthur R. Miller, McIntyre *in Context: A Very Personal Perspective*, 63 S.C. L. Rev. 465, 475 (2012) (explaining that the Supreme Court's recent opinion in *McIntyre* "clearly signaled a contraction" of the reach of personal jurisdiction). *See also Tire Eng'g & Distrib., LLC v. Shandong Linglon Rubber Co., Ltd.*, – F.3d – , 2012 WL 2036971, at *5 (4th Cir. June 6, 2012) (discussing purposeful availment and noting that actions such as ongoing business relations, in-person visits, and substantial correspondence amounted to purposeful availment, while exchanging brief emails and telephone conversations, not maintaining offices in the forum state, and not advertising in the forum state did not); *ScanSource, Inc. v. Mitel Networks Corp*., No. 6:11–cv–00382, 2011 WL 2550719, at *3 (D.S.C. June 24, 2011) (noting that a single phone call is insufficient to establish specific jurisdiction over a defendant); *Umbro U.S.A. v. Goner*, 825 F.Supp. 738, 741 (D.S.C. 1993) (holding that the court lacked jurisdiction over a defendant because the plaintiff had initially solicited the defendant, the defendant made no

effort to develop a market in South Carolina, and any contacts by the defendant with South Carolina were in direct response to the plaintiff's request).

Having failed to make a *prima facie* showing that ACE INA availed itself of the privilege of conducting activities in South Carolina, this Court need not go further with its jurisdictional analysis. Nonetheless, out of an abundance of caution, this Court will briefly discuss the second and third prong of the Fourth Circuit's specific jurisdiction inquiry, under which Plaintiffs also fail to make a *prima facie* showing of jurisdiction.

ii.    Activities not directed at South Carolina

ACE INA's contacts with South Carolina do not form the basis of the suit. *Consulting Eng'rs Corp.*, 561 F.3d at 278–79. "Because a sovereign's jurisdiction remains territorial, to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that 'they amount to a surrogate for presence and thus render the exercise of sovereignty just.' " *Id.* at 277–78. (quoting *ESAB Group, Inc.*, 126 F.3d at 623).

As this Court has discussed, Plaintiffs have shown that any contacts ACE INA had with South Carolina were, at most, fleeting and insignificant. Plaintiffs attempt to inflate the significance of Mr. Sheets' letter by arguing that "the denial of the ACE INA claim, the event that set this litigation in motion, was written in Columbia by [Mr. Sheets] and sent to Sonoco's risk manager in [South Carolina] . . . ."[3] [Pls.' Resp., Doc. #6, at 10.] Again, the employment

---

[3] Plaintiffs also attempt to make weight from the fact that Mr. Sheets' letter references the Canadian Policy while referring to Sonoco Products (and not Sonoco Canada) as an insured. [Pls.' Resp., Doc. #6, at 10.] Inasmuch as Sonoco Products and Sonoco Canada each submitted a claim for the same loss under the Master Policy and the Canadian Policy, respectively, Mr. Sheets coordinated the investigation and adjustment of the claims. [*See* Sheets Ltr., Doc. # 6-1, at 30 (noting that although ACE INA reached a decision under the Canadian Policy, other insurers were still evaluating the loss under the Master Policy).]

of Mr. Sheets was a condition put forth by Sonoco Products. Further, the letter itself, which is Plaintiffs' chief evidence that ACE INA had substantial contacts with South Carolina, is from Mr. Sheets and *not* ACE INA. [Sheets Ltr., Doc. # 6-1, at 29–31.] In this letter, Mr. Sheets indicates that relevant claim information was to be sent to Canada, notes that the loss at issue occurred in Canada, references investigations presumably performed in Canada, and explains that ACE INA is denying the claim. [*Id.*]

This single correspondence from Mr. Sheets gives no indication that ACE INA directed any activities at South Carolina. To the extent this letter can be read to evidence a contact with South Carolina, the putative contact is not enough to make a *prima facie* showing that the contact was "so substantial that [it] amount to a surrogate . . . presence." *Consulting Eng'rs Corp.*, 561 F.3d at 277–78 (internal quotation marks omitted).

### iii. Exercise of jurisdiction not constitutionally reasonable

Even if ACE INA had purposefully availed itself of the privilege of doing business in South Carolina, and its activities were directed at South Carolina, Plaintiffs fail to show that the exercise of personal jurisdiction over ACE INA would be constitutionally reasonable.

Courts consider a number of factors to ensure the appropriateness of the forum. *Consulting Eng'rs Corp.*, 561 F.3d at 279. "Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Id.*

After considering the above factors, the Court finds that it would be constitutionally unreasonable to exercise personal jurisdiction over ACE INA.

ACE INA will incur a burden in litigating this case in South Carolina. It is a Canadian company with no offices, personnel, or other presence in South Carolina. [*See* Pls.' Resp., Doc. #6, at 9–10.] South Carolina has very little interest in interpreting a Canadian insurance policy, which is to be interpreted under Canadian law and is between two Canadian entities. Although Plaintiffs do have an interest in obtaining relief, this interest is still preserved. Interpretation of the Canadian Policy is an issue currently before a Canadian court, while this Court is interpreting the Master Policy, which was issued in the United States and is subject to South Carolina law. [*See, e.g.*, Pls.' Resp., Doc. #6, at 12; Canadian Filing, Doc. # 4-1, at 22–30.] Allowing the Canadian policy and Canadian parties to proceed before a Canadian court, while keeping the South Carolina policy and U.S. parties before a South Carolina court, is efficient and in keeping with the policy that courts of a particular country are often best able to interpret and apply the laws of that country. *See, e.g.*, *Eckert Intern., Inc. v. Gov't of Sovereign Democratic Eckert Intern., Inc. v. Gov't of Sovereign Democratic Republic of Fiji*, 32 F.3d 77, 80–82 (4th Cir. 1994).

Given Plaintiffs' failure to prove a *prima facie* case of personal jurisdiction over ACE INA under any prong of the Fourth Circuit's three-part test for asserting specific jurisdiction, this Court grants ACE INA's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).[4]

---

[4] ACE INA also moved for dismissal under Rule 12(b)(5), arguing that the claims against it should be dismissed for insufficient service of process. [Defs.' Mot., Doc. # 4-1, at 5.] Because this Court has dismissed ACE INA from this action for lack of personal jurisdiction, it need not rule on whether service of process was sufficient in this case. Nonetheless, the Court notes that under South Carolina law, a foreign entity that conducts business in South Carolina "is considered to have designated the Secretary of State as its agent upon whom process against it may be served . . . out of or in connection with the doing of any business in this State." S.C. Code Ann. § 15-9-245. Here, Plaintiffs have sufficiently shown that they delivered the Summons and Complaint to ACE INA through the Secretary of State. [*See* Pls.' Resp., Doc. #6, at 13]. However, for this delivery to constitute sufficient service of process, ACE INA would

B.    *Forum non conveniens*

This Court lacks personal jurisdiction over Defendant ACE INA. Alternatively, even if this Court were able to exercise personal jurisdiction, the doctrine of *forum non conveniens* would nonetheless require dismissal of the claims against ACE INA.

1.    Standard of review

The doctrine of *forum non conveniens* has "continuing application in federal courts only in cases where the alternative forum is abroad . . . ." *Fidelity Bank PLC v. N. Fox Shipping N. V.*, 242 F. App'x 84, 90 (4th Cir. 2007). A federal court may dismiss a case on the ground of *forum non conveniens* "when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *SAS Inst., Inc. v. World Programming Ltd.*, 11–1783, 2012 WL 503838, at *1 (4th Cir. Feb. 16, 2012) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007)).

The determination of whether dismissal based on *forum non conveniens* is appropriate requires a two-step analysis. First, it must be determined "whether an alternative forum is available." *In re Compania Naviera Joanna S.A.*, 531 F. Supp. 2d 680, 684 (D.S.C. 2007) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). Second, if an alternative forum is available, "the court must apply various factors to determine whether the private litigants' interests and the public interest require dismissal." *Id.* (citing *Piper Aircraft Co.*, 454 U.S. at 257–61).

---

have to have been conducting business in South Carolina, and the lawsuit would need to arise out of ACE INA's business in South Carolina. For the reasons discussed herein, Plaintiffs have not shown that ACE INA conducted business in South Carolina or that this lawsuit arises out of ACE INA's supposed business in South Carolina.

"A party seeking dismissal on grounds of *forum non conveniens* 'ordinarily bears a heavy burden in opposing the plaintiff's chosen forum.' " *SAS Institute, Inc.*, 2012 WL 503838, at *1 (quoting *Sinochem*, 549 U.S. at 430). "The moving party bears the burden not only of showing that an adequate alternate forum exists, but also that the balance of private and public interest factors favors dismissal." *Id*. (internal citations and quotation marks omitted).

For an alternative forum to exist, the forum must be available and adequate. *See Fidelity Bank PLC*, 242 F. App'x at 90. The availability requirement is generally "satisfied when the defendant is 'amenable to process' in the [foreign] jurisdiction." *Id*. (quoting *Piper Aircraft*, 454 U.S. at 254 n.22). A foreign forum is adequate when " '(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.' " *Id*. (citing *Mercier v. Sheraton Int'l, Inc*., 935 F.2d 419, 424 (1st Cir. 1991)) (internal citations omitted).

Provided that an alternative forum does exist, it must be determined whether public and private interests necessitate dismissal in the current forum. The Fourth Circuit has explained that "[t]he private interest factors focus on the litigants and include the consideration of the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.' " *Id*. at 90 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6). In contrast, "[t]he public interest factors include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws,

or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.' " *Id.* (quoting *Piper Aircraft*, 454 U.S. at 241 n.6).

2.  Dismissal on *forum non conveniens* grounds is appropriate for ACE INA

Defendants have moved to dismiss the claims as to all Defendants, including ACE INA, on the basis of *forum non conveniens*. [Defs.' Mot., Doc. # 4-1, at 11–12.] Although this Court finds dismissal of the claims against all Defendants inappropriate under this doctrine, *forum non conveniens* would require the dismissal of all claims against ACE INA.

As an initial matter, this Court is aware that *forum non conveniens* is typically invoked to dismiss a case in its entirety. However, the doctrine is flexible enough to permit dismissal of the claims against a single Defendant. *See, e.g.*, *Piper Aircraft Co.*, 454 U.S. at 247, 249 (1981) (holding that judicial discretion inhering under *forum non conveniens* cannot be limited by per se rules and emphasizing "the need to retain flexibility" in *forum non conveniens* considerations); *McLane v. Los Suenos Marriott Ocean and Golf Resort*, No. 11–11860, 2012 WL 1414602, at *1–2 (11th Cir. April 2012) (discussing the dismissal of a remaining party on basis of *forum non conveniens*); *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368 (Fed. Cir. 1994) (discussing dismissal of a single claim on basis of *forum non conveniens*). A flexible application of *forum non conveniens* is particularly prudent here. Plaintiffs have essentially brought two lawsuits as one: a lawsuit relating to the Canadian Policy and a lawsuit relating to the Master Policy. Because ACE INA is the only Defendant subject to claims under the Canadian Policy, dismissing ACE INA from this lawsuit has the effect of dismissing only the lawsuit relating to the Canadian Policy.

Defendants have shown that, as to ACE INA, an adequate alternative forum exists by way of Ontario, Canada. Sonoco Canada, the only other party to the Canadian Policy, is not only amenable to service of process and jurisdiction in Canada, but is currently a party in a

Canadian lawsuit seeking a declaration of rights under the Canadian Policy. [*See* Pls.' Resp., Doc. # 6, at 14–15; Canadian Filing, Doc. # 4-1, at 22–30.]

Private and public interests also necessitate dismissal of ACE INA in this forum. The following private interest factors warrant dismissing ACE INA from this action: the premises where the loss at issue occurred is in Canada; various investigations as to the cause of the accident occurred in Canada; ACE INA and Sonoco Canada specifically agreed that Canadian law would govern any dispute under their policy; and ACE INA, Sonoco Canada, and their employees and agents may be compelled to appear before the Canadian court. [*See, e.g.*, Pls.' Resp., Doc. # 6, at 8–11; Sheets Ltr., Doc. # 6-1, at 29–31.] The public factors applicable to this case provide even stronger support for dismissing ACE INA. The Canadian court plainly has a local interest in adjudicating a Canadian insurance policy between Canadian entities; a Canadian court is also the forum most at home with Canadian law, which governs the claims against ACE INA; dismissal of ACE INA would avoid the problem of this Court having to apply and interpret Canadian law; maintaining the case against ACE INA could result in inconsistent interpretation here and in Canada regarding the rights and responsibilities under the Canadian Policy; and given that ACE INA has, at most, a tenuous connection to South Carolina it would be an unfair burden to require this foreign company to make itself available here in South Carolina.

Because an alternative forum has jurisdiction to hear the case, and because trial in South Carolina would establish oppressiveness and vexation to ACE INA out of all proportion to Plaintiffs' convenience, Defendants have met their burden that ACE INA should be dismissed from this action based upon *forum non conveniens*.

## II.  _Forum non conveniens_ **is inapplicable for remaining Defendants**

Defendants have also moved to dismiss this case in its entirety on the basis of _forum non conveniens._ Although the doctrine may necessitate dismissal of ACE INA, a review of the record shows that the remaining Defendants have failed to show that dismissal under _forum non conveniens_ is applicable to this case.

Of initial and critical importance that the Master Policy, which governs the remaining claims in this case, contains a forum selection clause requiring that any dispute under the Master Policy be brought in South Carolina and be construed under South Carolina law. [_See_ Master Policy, Doc. # 6-1, at 26.] Even under a _forum non conveniens_ analysis, forum selection clauses are generally considered valid. _Siliconature S.p.a. v. Seal King N. Am., Inc_., No. 8:05-3578, 2006 WL 3386838, at *2 (D.S.C. Nov. 21, 2006) (citing _M/S Bremen v. Zapata Off-Shore Co._, 407 U.S. 1, 10 (1972)). Further, Defendants have not challenged the validity or enforceability of the Master Policy's foreign selection clause.[5] Given that the remaining Defendants submitted to a forum selection clause which requires disputes under the Master Policy to be brought in South Carolina, Defendants' request to dismiss the remaining claims on the basis of _forum non conveniens_ must be denied. _See, e.g._, _M/S Bremen,_ 407 U.S. at 14 ("[I]t would be unrealistic to think that the parties did not conduct their negotiations, . . . with the consequences of the forum clause figuring prominently in their calculations."); _Nat'l Equip. Rental, Ltd. v. Szukhent_, 375 U.S. 311, 315-16 (1964) ("[I]t is settled . . . that parties to a

---

[5]  It is true that forum selection clauses may not be enforced if to do so would be "unreasonable under the circumstances." _Siliconature S.p.a._, 2006 WL 3386838, at (citing M/S _Bremen_, 407 U.S. at 10). However, even if the remaining Defendants had challenged the validity of the forum selection clause, which they have not, such a challenge would fail as nothing in the record suggest the clause was induced by fraud or overreaching, that the clause would deprive the remaining Defendants of their day in court, that the chosen law would deprive any party of a remedy, or that strong South Carolina public policy bars enforcement. _See id._ (citing _Allen v. Lloyd's of London_, 94 F.3d 923, 928 (4th Cir. 1996)).

contract may agree in advance to submit to the jurisdiction of a given court[.]"); *Baker v. Adidas Am., Inc.*, 335 Fed. App'x 356, 360–61 (4th Cir. 2009) (affirming district court's decision that valid forum selection clause required the suit be brought in the agreed-upon forum); *Nw. Nat. Ins. Co. v. Donovan*, 916 F.2d 372, 378 (7th Cir. 1990) ("[O]ne who has agreed to be sued in the forum selected by the plaintiff has thereby agreed not to seek to retract his agreement by asking for a change of venue on the basis of costs or inconvenience to himself; such an effort would violate the duty of good faith that modern law reads into contractual undertakings."); *Nizam's Inst. of Med. Sci. v. Exchange Techs., Inc.*, 28 F.3d 1210 (Table), 1994 WL 319187, at *3 (4th Cir. 1994) (holding that a forum selection clause should control in a dispute regarding the location of the litigation).

Although the existence of a valid forum selection clause is enough to support this Court's ruling, the remaining Defendants also fail to prove that an adequate alternate forum exists, and that the balance of private and public interest factors favors dismissal.

First, there is some doubt whether Ontario provides an available and adequate alternative forum. The pending Canadian litigation only involves the Canadian Policy. Only in South Carolina is litigation pending regarding the Master Policy, which contains certain limitations periods in which a party may bring a claim. [*See* Defs.' Reply, Doc. # 8, at 7–11.] Although Defendants have agreed not to raise limitations-based defenses should they be haled before a Canadian court, the fact that certain limitations periods may have expired, coupled with the lack of any other litigation concerning the Master Policy, is nonetheless problematic.

Second, even assuming an alternative forum does exist, the private and public interests weigh against dismissing the remaining claims, which all stem form the Master Policy. There are a number of private interest factors that counsel against dismissal. One, although the evidence of the physical loss would likely be found in Canada, other key evidence would be

located outside of Canada, including the personnel involved in the negotiation and management of the Master Policy and correspondence from ACE American and other U.S.-based insurers. Two, although some witnesses may be located in Canada, which would make the witnesses costly to produce and potentially outside of this Court's jurisdictional reach, this is balanced by the fact that a number of witnesses, such as company officials and engineers sent to Canada to investigate the loss, would be located in or near South Carolina. Three, Defendants agreed to adjudicate disputes under the Master Policy in a South Carolina court; any issues now raised by Defendants would have been foreseeable to them during these negotiations. *See M/S Bremen,* 407 U.S. at 14.

The public interests in this case also weigh in favor of denying the remaining Defendants' Motion to Dismiss. The Master Policy was issued within the United States and requires the application of South Carolina law. Certainly, a South Carolina court has a greater interest interpreting the Master Policy than does a Canadian court. Further, this Court is also more familiar with the South Carolina law that must govern this action. It would be burdensome for a Canadian court to interpret a U.S.-based insurance policy governed by South Carolina law and involving U.S.-based entities.

Thus, as Defendants have failed to carry their burden of proving that *forum non conveniens* requires dismissal of the remaining claims in the case, this Court must deny the Motion to Dismiss as to the remaining Defendants. *See Duha v. Agrium, Inc*., 448 F.3d 867, 873–74 (6th Cir. 2006) ("[T]he standard of deference for a U.S. plaintiff's choice of a home forum permits dismissal only when the defendant 'establish[es] such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent.' ") (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

## Conclusion

Based on the foregoing, **IT IS ORDERED** that Defendants' Motion to Dismiss, Doc # 4, is **GRANTED** *in part*, and **DENIED** *in part*.

It is **THEREFORE ORDERED** that Defendant ACE INA Insurance is **DISMISSED** from this action, and the remaining Defendants' request to dismiss this case is **DENIED**.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
July 11, 2012